UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 19bk22967 |
| Natalja Vildziuniene, | Chapter 11 |
| Debtor(s). | Judge Timothy A. Barnes |

ORDER GRANTING IN PART AND DENYING IN PART
DEBTOR'S MOTION TO DISMISS CHAPTER 11 CASE

This matter comes on for consideration on (1) the Debtor's Motion to Dismiss Chapter 11 Case [Dkt. No. 542] (the "Debtor's Motion"), brought by debtor and debtor-in-possession Natalja Vildziuniene (the "Debtor"), and (2) the Motion to Convert or Dismiss Chapter 11 Case [Dkt. No. 545] (the "U.S. Trustee Motion" and the together with the Debtor's Motion, the "Motions to Dismiss"), brought by Patrick S. Layng (the "U.S. Trustee").

Notices of objection to the Debtor's Motion have been filed by (i) creditor and former spouse of the Debtor, Vito Montana ("Montana"), Notice of Objection to Motion of Debtor Docket # 542 [Dkt. No. 544], (ii) the Debtor's former counsel and administrative creditor Bruce de'Medici ("de'Medici"), Notice of Objection to Motion to Debtor's Motion to Dismiss Chapter 11 Case [Dkt. No. 548] and (iii) the U.S. Trustee, Notice of Objection [Dkt. No. 551]. A notice of Objection to the U.S. Trustee Motion has been filed by the Debtor, Debtor's Notice of Objection to U.S. Trustee's Motion to Convert or Dismiss, Docket No. 545 [Dkt. No. 550].[1]  For sake of convenience, the notices of objection are referred to collectively herein as the "Objections".

A hearing on the Motions to Dismiss and the Objections was conducted on September 20, 2021 (the "Hearing").  Attorneys for the Debtor, the U.S. Trustee, the Small Business Administration, Montana, creditor and adversary defendant Newtek Small Business Finance, LLC and various adversary defendants appeared, as did de'Medici representing himself.  No party requested further briefing on any of the issues discussed herein.

At the Hearing, the Debtor conceded and no party disputed that cause to dismiss or convert existed under, among other things, section 1112(b)(4)(A) of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code").  As to whether conversion or dismissal was appropriate under section 1112(b)(1), all parties other than de'Medici either supported dismissal or were neutral as to the determination.

After considering the positions of the parties, the undisputed administrative insolvency of the chapter 11 bankruptcy estate and absence of alternative recovery to pay a chapter 7 trustee, the

---

[1]   A notice of objection is a procedural device implemented by this court in its Third Amended General Order 20-03 (Court Proceedings During COVID-19 Public Emergency).  Available at https://www.ilnb.uscourts.gov/sites/default/files/general-ordes/Gen-Ord-20-03-ThirdAmendedCorrected.pdf (last visited September 23, 2021).  It is used to ensure that, prior to the initial presentment of a motion, the court not grant the motion in chambers.  *Id.* at ¶ 7(d); *In re Kimball Hill, Inc.*, 630 B.R. 294, 301 n.8 (Bankr. N.D. Ill. 2021).  It does not convey the nature of the objection.

court concluded that the best interests of creditors was served by dismissal, thus minimizing the additional drain on the estate of a protracted chapter 7 liquidation where the issues upon which it would rest remained ones that must, first and foremost, be determined by the state court. *See* Order Abstaining from Determination of Claims and Interests in Proceeds dated June 17, 2021 [Dkt. No. 479] (the "Abstention Order").

Having concluded so, the court considered whether the Debtor's Motion or the U.S. Trustee Motion should be granted. The primary difference between the Motions is that the Debtor's Motion seeks for the court to conduct a post-dismissal administrative claims process. Those parties' favoring such a process relied on *In re Sweports, Ltd.*, 777 F.3d 364 (7th Cir. 2015), to support such a request.

In *Sweports*, counsel to an official committee of unsecured creditors failed to seek adjudication of his administrative claim prior to consenting to the dismissal of the underlying case. *Id.* at 366. He also failed to request that the court reserve jurisdiction to adjudicate his claim post dismissal. *Id.* at 368. When, after the case had been dismissed but not yet closed, counsel sought to have his claim adjudicated by the bankruptcy court, the court denied his request for lack of authority to do so. *Id.* at 366. On direct appeal, the Seventh Circuit reversed and remanded, stating that it could see no reason to think that counsel should be disentitled to an exercise of "clean-up jurisdiction" to take care of minor loose ends. *Id.* at 367–68.

Here the parties argue that *Sweports* supports a post-dismissal claims process such as was required by the Seventh Circuit in *Sweports* taking place there. It does not.

*Sweports*, while undoubtedly correct in its determination of what a bankruptcy court *may* do post dismissal, is unfortunately a less than reliable resource for what a bankruptcy court *should* do post dismissal. In *Sweports*, the Seventh Circuit was not asked whether the court should exercise post-dismissal jurisdiction, only whether it could. Still, in answer the latter, the Seventh Circuit spoke in ways that seemed to address the former.

One problem with exercising jurisdiction post dismissal is that, by definition, almost nothing the bankruptcy court might do could be either necessary or appropriate to carry out the provisions of the Bankruptcy Code. *See, e.g.*, 11 U.S.C. § 105(a). There is a reason that courts have held that cases commenced with no bankruptcy purpose should be dismissed for bad faith. *See, e.g., In re Tabor*, 583 B.R. 155, 183 (Bankr. N.D. Ill. 2018) (Barnes, J.) (citing cases). The parties should not seek to and the court should not countenance a request to have the bankruptcy court act where there is no legitimate bankruptcy purpose served.

*Sweports* was just such a case where the bankruptcy court should not have acted post dismissal. Absent an order otherwise, dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." 11 U.S.C. § 349(b)(3). "[I]t aims to return to the prepetition financial *status quo*." *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 979 (2017). In *Sweports*, the post-dismissal request from the committee came after such default revesting. That revesting had occurred without reservation and there was no privity between the committee and the debtor (the committee, in representing the estate, clearly did not work for the debtor), nothing in the bankruptcy court's approval of post-dismissal fees could have assisted the committee in collecting its unpaid fees. Rather, as final orders are judgments for

2

the purposes of bankruptcy cases, see Fed. R. Bankr. P. 9001(7), the entry of such an order could only serve to confound the state court to which such an order would ultimately be presented for collection.

Montana and the Debtor here nonetheless argue that *Sweports* applies and that cause exists for the bankruptcy court to continue to exercise jurisdiction over the bankruptcy estate and the parties' administrative expense claims post-dismissal. The court disagrees.

While is true that the holding in *Sweports* means that this court *could* act as they propose, though they fail to make their requests in the context of cause under section 349 of the Bankruptcy Code. It does not mean that court *should*. The major point of contention in this case has been over which the court has only a tenuous hold to begin with. This case has from its outset been almost about the division of assets between the Debtor and her former spouse. From the outset, this court has attempted to balance bankruptcy jurisdiction with those issues more properly heard by the state court under the domestic relations exception. *Marshall v. Marshall*, 547 U.S. 293, 311 (2006) (the domestic relations exception attempts to prevent federal courts from "disturb[ing] or affect[ing] the possession of property in the custody of a state court."); *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018).

Early in the case, the court granted Montana relief from the automatic stay so as to permit him to pursue matters within the domestic relations exception. 2nd Interim Order for Relief from the Automatic Stay [Dkt. No. 105] (the "Stay Order"). Relief from stay removes a moratorium but does not, however, affect this court's exclusive jurisdiction over a debtor's assets. *See, e.g.*, *Cook v. Cook*, 220 B.R. 918, 922 n.2 (Bankr. E.D. Mich. 1997) (noting that mere relief from stay does not affect 28 U.S.C. § 1334(d)).

In light of that, the Debtor and Montana worked together to liquidate marital assets while reserving ultimate orders on asset distribution for the bankruptcy court. When the time came to consider such a distribution, however, it became clear that the bankruptcy court could not order a distribution until the state domestic relations court had finished handling those issues in its exclusive jurisdiction. *See* Abstention Order, at ¶ 1 *et passim* (noting the objections of the various creditors from the domestic relations action and the Debtor's attorney regarding the distribution of the sale proceeds). As a result, this court abstained from making such a determination in favor of the state court, *see id.* at ¶ 1, while reserving ultimate disposition under 28 U.S.C. § 1334(d)(1) until after the state court had acted. *Id.* at ¶ 2. The state court has not, to this court's knowledge, so acted.

What Montana and the Debtor propose here would solve the issue in *Sweports* regarding section 349(b), as any order of dismissal could and presumably would retain jurisdiction over the estate for cause. But Montana and the Debtor fail to adequately explain why such a step is appropriate in light of the foregoing. What they propose is for this court to continue the chapter 11 case after dismissal, as what they want is for the court to perform post-dismissal everything that remains for the court to do in the case if not dismissed.

This reads all meaning out of section 1112(b), as while cause indisputably exists to dismiss or convert this case, Montana and the Debtor request that court dismiss without any real effect. It is, in essence, a "structured dismissal." *See, e.g., Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 977 (2017) (impliedly approving of structured dismissals of a chapter 11 cases so long as the priority

3

scheme of bankruptcy is not violated). As the Supreme Court stated, , this allows "courts the flexibility to protect reliance interests acquired in the bankruptcy …." *Id.*

Here neither Montana nor the Debtor point to any such interests. Instead, as was discussed at the Hearing, the interests of the administrative creditors are all of a nature that could be handled by the state domestic relations court. That court can, after the dismissal of the above-captioned bankruptcy case, act without fear of overlapping jurisdiction.

As a result, the court concludes that cause does not exists for the court to order a retention of jurisdiction over estate property under section 349(b) and that therefore no purpose is served in conducting a post-dismissal claims resolution process.

IT IS, THEREFORE, HEREBY ORDERED THAT:

1. The Debtor's Motion is GRANTED insofar as it seeks dismissal of the chapter 11 case but is DENIED insofar as it seeks conditions on such dismissal to permit the case to continue to be administered after such dismissal.

2. As a result, the Debtor's above-captioned chapter 11 case is DISMISSED.

3. As a result of the granting the Debtor's Motion, the U.S. Trustee Motion is moot and is DENIED as such.

4. This Order is final and appealable as of the date of its entry, though the parties may seek reconsideration of any aspect of this Order in accordance with the applicable bankruptcy rules.

Dated: September 24, 2021                         ENTERED:

                                                                           Timothy A. Barnes
                                                                           United States Bankruptcy Judge